SENIOR CITIZENS BOOTHEEL SERVICES, INC., a Missouri General Not for Profit Corporation, and State of Missouri ex rel. Senior Citizens Bootheel Services, Inc., Plaintiff–Appellant,

v.

Durwood DOVER, Ralph Boyer, Joseph Spalding, and Gerald Inman, Officially and Personally, C.R. Waters, Thomas A. Marshall and Transamerican Insurance Co., Defendants–Respondents.

No. 17083.

Missouri Court of Appeals, Southern District, Division One.

June 13, 1991.

Phillip J. Barkett, Jr., Dempster, Barkett & McClellan, Sikeston, for plaintiff-appellant.

David A. Dolan, Pros. Atty., Benton, David D. Crane, Reinert & Duree, St. Louis, Thomas L. Arnold, Benton, for defendants-respondents.

MAUS, Presiding Judge.

Plaintiff Senior Citizens Bootheel Services, Inc. (SCBS), a Missouri not-for-profit corporation, is the owner of real estate in Sikeston, Scott County, Missouri, known as "Wendell Apartments". Wendell Apartments provides housing for qualified individuals 62 years of age or older, or handicapped or disabled of any age. Wendell Apartments was financed by an individual initial donation and a loan through the United States Department of Housing and Urban Development (HUD).

SCBS filed this action in three counts against the members of the Board of Equalization of Scott County, Missouri, the Scott County assessor and the Scott County collector and his bonding company. Count I prayed for a judgment striking the real property from the tax rolls for 1989 and restraining the assessor from placing the same on the tax rolls in subsequent years. Count II sought a judgment against the collector and his bonding company for a refund of taxes paid in 1986. Count III prayed for a judgment against "the defendant" for damages SCBS incurred because the assessor improperly assessed and placed Wendell Apartments on the tax rolls for 1989.

The trial court declared Wendell Apartments not exempt from ad valorem property taxation and dismissed Count I with prejudice. It declared SCBS was not entitled to a refund of the 1986 taxes and dismissed Count II with prejudice. It denied SCBS's motion to dismiss its claims against the named defendants personally without prejudice. It dismissed those claims, including Count III, with prejudice. Additionally, in the dismissal of Counts I and II, the entry of the trial court provided "plaintiff is hereby ordered to pay the costs, and reasonable fees charged to Defendants associated with this Count of this suit." SCBS states three points on appeal.

Obviously, this appeal centers upon the denial of a charitable exemption from ad valorem taxation by reason of Mo. Const. art. 10, § 6, and § 137.100(5). Mo. Const. art. 5, § 3, in part, provides: "The supreme court shall have exclusive appellate jurisdiction in all cases involving ... the construction of the revenue laws of this state." However,

"[i]n *Franciscan Tertiary Province v. State Tax Commission*, 566 S.W.2d 213 (Mo. banc 1978), and its progeny, this Court has established the criteria for determining whether property shall be exempt under section 137.100:". *Affiliated Med. Transport v. Tax Com'n*, 741 S.W.2d 25, 26 (Mo. banc 1987).

Those criteria have been restated and reinforced in *Pentecostal Church of God v. Hughlett*, 737 S.W.2d 728 (Mo. banc 1987).

"Given the establishment of such criteria, this appeal involves questions of application of a revenue law already construed by this Court and, therefore, jurisdiction of this appeal lies in the [Southern District] of the Court of Appeals." *Affiliated* at 27.

■ SCBS' first point on appeal is that the trial court erred in declaring that the real property known as "Wendell Apartments" was not exempt from taxation for

1989 under the provisions of § 137.100(5) because the evidence established facts, summarized in the point, which meet the criteria of *Franciscan Tertiary Province v. State Tax Commission,* 566 S.W.2d 213 (Mo. banc 1978) and *Pentecostal.* SCBS is a Missouri not-for-profit corporation. Its "Articles of Incorporation" include the following provisions:

"(o) The Corporation is irrevocably dedicated to and operated exclusively for, nonprofit purposes; and no part of the income or assets of the Corporation shall be distributed to, nor inure to the benefit of, any individual;

\*    \*    \*    \*    \*    \*

(q) In the event of the dissolution of the Corporation or the winding up of its affairs, or other liquidation of its assets, the Corporation's property shall not be conveyed to any organization created or operated for profit or to any individual for less than the fair market value of such property, and all assets remaining after the payment of the Corporation's debt shall be conveyed or distributed only to an organization or organizations created for nonprofit purposes similar to those of the Corporation; provided, however, that the Corporation shall at all times have the power to convey any or all of its property to the Secretary of Housing and Urban Development;".

Except for a $10,000 individual donation, the construction of Wendell Apartments was financed by a loan from HUD. SCBS devotes Wendell Apartments to use as apartment housing for qualified elderly and handicapped persons under and in accordance with an agreement with HUD.

"*Franciscan* was a seminal case which established the provision of housing for aged and handicapped persons who are unable to bear the full cost is a charitable purpose, so that property used exclusively for that purpose is exempt from ad valorem taxation. This holding distinguished or qualified several earlier cases. *The general pattern described in Franciscan exists in this case, to such an extent that the details need not be repeated, and so we direct our attention to the distinctions suggested by the taxing authorities and by the court below."* *Pentecostal* at 729. (Emphasis added.) That rationale and analysis is applicable to the disposition of this appeal.

The defendants contend there are four reasons why *Franciscan* and *Pentecostal* are not applicable and Wendell Apartments is not used for purely charitable purposes and therefore is not exempt.

The first reason is "SCBS has failed to show ... that it, as a corporate entity, has made any gift or affirmative donation to the construction, operation or maintenance of Wendell Apartments, or that it has provided, funded, arranged for or in any other way contributed to services available to residents of Wendell Apartments". They cite the fact that SCBS made no donation to the construction costs and that the social services provided to the residents of Wendell Apartments result from other sources. Those propositions are conceded, but they do not form a basis to deny the tax exemption claim for Wendell Apartments.

■ Section 137.100(5), in relevant part, provides:

"All property, real and personal, actually and regularly used exclusively ... for purposes purely charitable and not held for private or corporate profit, except that the exemption herein granted does not include real property ... held or used as investment".

Also see Mo. Const. art. 10, § 6. The test is the use made of the property for the period in question. *Young Men's Christian Ass'n v. Sestric,* 362 Mo. 551, 242 S.W.2d 497 (banc 1951). The first reason advanced by the defendants has been recognized and denied.

"The collector points out that in *Franciscan* the cost of social and recreational services was paid by the owner of the project. Here, similar services are not supplied by the owner, but rather are provided by private and foundation donations. Reference to *Franciscan* again shows that this is a distinction without a difference. The opinion states, [566] S.W.2d [213] [11] '... *the contribution to the project could have been solely*

from government funds ...,' citing *Bader Realty & Inv. Co. v. St. Louis Housing Authority*, 358 Mo. 747, 217 S.W.2d 489 (banc 1949)." *Pentecostal* at 730. (Emphasis added).

The defendants' second reason is that the evidence does not show there was a lack of suitable housing in the area surrounding Wendell Apartments for aged or handicapped low-income persons. Such showing is not a criterion established by *Franciscan* and *Pentecostal*. The fact the evidence does not so show does not cause the property to fail the statutory test of use "for purposes purely charitable." This reason has been indirectly considered and denied.

"The court went on to state that such considerations as whether a profit or loss was in fact realized or sustained, or that some competition with private business exists, or that pay patients are admitted for treatment, or that a large part of its revenue is derived from pay patients, were not determinative if, from all the evidence, it could fairly be said that the actual use of the hospital property was consistent with the nonprofit feature and charitable purposes expressed in the corporation's articles of agreement." *Franciscan* at 221.

The defendants' third reason is that the evidence fails to show that the rents charged to occupants of the Wendell Apartments are below the fair market rents in the area for similar housing. Again, the absence of such evidence does not mean the evidence produced by SCBS does not meet the criteria of *Franciscan* and *Pentecostal*. Moreover, the evidence does show that financing for the housing was supplied by HUD at less than the market rate of interest and that the tenants do receive rental subsidies. "Nor is it of any significance that all or part of the cost of furnishing the housing is provided by government subsidies." *Pentecostal* at 730.

The defendants' fourth reason is that SCBS has not shown that the property is used for purposes purely charitable "in that it has failed to show that this property

is not held for investment purposes." They base this reason upon the argument that SCBS "as a corporate entity has had nothing to do with the provision of services to its residents, has made no financial contribution to building or operating Wendell Apartments, and is sitting by waiting for a building worth approximately 2.6 million dollars to become its property free and clear." The argument ignores the provisions in the Articles of Incorporation of SCBS, quoted above. It is sufficient to note that again the defendants' argument has been considered and succinctly denied.

"It is pointed out that after the mortgage is paid off, presumably after 40 years, the plaintiff will own a valuable building free and clear, and at little cost. This circumstance, however was present in *Franciscan*, 566 S.W.2d 213 [12], and so does not serve to distinguish the case." *Pentecostal* at 729–730.

In *Pentecostal*, the court reached the following conclusion:

"*Franciscan* was designed to give general approval to housing projects for the elderly and handicapped. It should not be read grudgingly. The attempted distinctions are insufficient as a matter of law. The evidence shows without contradiction that this project meets the threefold test of *Franciscan* in that: (1) it operates for purely charitable purposes; (2) no private profit may result, and (3) the dominant use benefits society generally, and an indefinite number of people." *Pentecostal* at 730.

That conclusion is applicable to this case. The evidence shows that in 1989 the status of SCBS and the use of Wendell Apartments met the criteria established by *Franciscan* and *Pentecostal*.

By Count I, SCBS prays that the defendants be restrained from collecting ad valorem taxes on Wendell Apartments for 1989 and subsequent years. The defendants have not questioned the remedy invoked by SCBS to establish the charitable exemption. See *Sperry Corp. v. Wiles*, 695 S.W.2d 471 (Mo. banc 1985). In the absence of challenge, it is not necessary to consider the appropriateness of the remedy

invoked. The relief prayed should be granted for the year 1989. However,

> "[i]n tax cases each year's tax is a separate transaction and each action relating to each year's tax is a new cause of action." *Young Men's Christian Ass'n*, 242 S.W.2d at 507.

The doctrines of res judicata and collateral estoppel, with limitations that need not be considered here, are applicable to ad valorem tax cases. However, a restraining order for years subsequent to 1989, is not warranted. *Young Men's Christian Ass'n v. Sestric*, supra. Also see *Pentecostal Church of God v. Hughlett*, supra.

The trial court found that because SCBS did not appropriately protest its payment of the 1986 taxes on Wendell Apartments it was not entitled to a refund of that payment. It dismissed Count II which sought that refund. SCBS does not appeal from that dismissal.

■ However, as noted, the trial court's judgment, in the dismissals of Counts I and II, provided SCBS was "ordered to pay ... reasonable fees charged to Defendants associated with this Count of this suit". SCBS' second point on appeal is that the trial court erred in assessing such reasonable fees against it. The parties have indulged in the reasonable assumption that these orders refer to attorneys fees.

> "With few exceptions, absent statutory authorization or contractual agreement, one litigant cannot recover his attorney fees from another litigant. *Mayor, Councilmen, & Citizens, etc. v. Beard*, 636 S.W.2d 330, 331 (Mo. banc 1982); *King v. F.T.J., Inc.*, 765 S.W.2d 301, 307–08 (Mo.App.1988). There is no statutory authorization that permits recovery of attorney fees in this case nor is there a contractual agreement for that purpose. Nor does this case fall within any of the exceptions to the general rule that one litigant cannot recover his attorney fees from another litigant. The trial court exceeded its authority in directing that the Commission pay the legal fees incurred by Rolla Apartments." *Rolla Apartments v. State Tax Com'n*, 797 S.W.2d 781, 790 (Mo.App.1990).

The orders concerning "reasonable fees" are erroneous.

SCBS' third point relates to Count III. As noted, that count prayed for damages of $20,000 against "the defendant." The allegations of this count include the following. The Board of Equalization reduced the valuation of Wendell Apartments to zero in 1988. But the assessor, without authority, replaced that property on the tax rolls for 1989. Wherefore, SCBS sought such damages against "the defendant".

In the caption of the petition the defendants are named in the following style: "Durwood Dover, Ralph Boyer, Joseph Spalding, and Gerald Inman, Officially and Personally, C.R. Waters, Thomas A. Marshall and Transamerican Insurance Co.". Whether "Officially and Personally" refers to the preceding named defendants, the Board of Equalization and the assessor or to the subsequently named defendants, the collector and his bonding company, is ambiguous. The parties have assumed the "Personally" applies to the collector and his bonding company even though the allegations of Count III are aimed at the assessor and the Board of Equalization, and the identity of "the defendant" is not specified. This Court, in deciding SCBS' third point, will indulge that assumption.

■ SCBS' third point is that the trial court erred in denying its dismissal of defendants Inman and Marshall individually without prejudice. At the pretrial conference, on the morning of trial, SCBS moved to dismiss without prejudice Inman and Marshall and Transamerican Insurance Co. individually. The trial court denied that request citing the lateness of the dismissal. In its judgment, the trial court recited that denial, dismissed Count III and dismissed all allegations against all defendants individually with prejudice.

On appeal, the defendants contend the denial of dismissal without prejudice of Inman and Marshall was proper in that evidence had been introduced upon a motion for summary judgment. They cite *Kerr v.*

**40**

*Grand Foundries, Inc.,* 451 S.W.2d 26 (Mo. 1970).

Rule 67.01 provides:

"A civil action may be dismissed by the plaintiff without prejudice without order of court anytime prior to the introduction of evidence at the trial. After the introduction of evidence is commenced, a plaintiff may dismiss his action without prejudice only by leave of court or by written consent of the adverse party. Leave of court shall be freely granted when justice so requires...."

The 1981 Committee Note to Rule 67.01 states that the 1980 amendment which added "at the trial" to the end of the first sentence was "added to make it clear that the introduction of evidence at a pretrial hearing does not affect the right of voluntary dismissal." Nevertheless, defendants also cite *Smith v. A.H. Robins Co.,* 702 S.W.2d 143 (Mo.App.1985). However, *Smith* is limited to circumstances where a hearing on a motion for summary judgment results in a disposition of the case on its merits.

*Kerr* was decided before the amendment to Rule 67.01. It is not necessary to decide it is no longer applicable. The essence of *Kerr* is "[t]he right to voluntary dismissal without prejudice before submission should be qualified to the extent that if there be a finding that defendant will lose some right of defense, or that plaintiff will gain some undue advantage, leave to dismiss should not be granted." *Kerr* at 29. In this case, the defendants do not demonstrate the loss of a defense or an undue advantage SCBS will gain. SCBS' dismissal without prejudice of Inman and Marshall individually should have been sustained. SCBS does not assert error in the dismissal of Count III or the dismissal with prejudice of allegations against the other defendants individually.

The judgment of the trial court dismissing Count I is reversed; those portions of the judgment ordering SCBS to pay reasonable fees charged to defendants are reversed. The dismissal of the allegations against Inman and Marshall individually with prejudice is reversed, and such allega-

tions are dismissed without prejudice. It is adjudged that for 1989 Wendell Apartments was exempt from ad valorem taxes by reason of charitable use under § 137.-100(5) and is stricken from the tax rolls for 1989. The defendants are restrained from collecting or attempting to collect ad valorem taxes for 1989 by reason of Wendell Apartments. The dismissal of Count II is affirmed. The dismissal of Count III and all other allegations against the defendants, with prejudice, except as to defendants Inman and Marshall, is affirmed. Costs are taxed against the defendants.

PREWITT and CROW, JJ., concur.