Robert SHEEDY, Jr. and Sharon Sheedy, Husband and Wife, Plaintiffs–Appellants,

v.

MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION, Defendant–Respondent.

No. 26893.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 21, 2005.

John M. Albright, Poplar Bluff, MO, for Appellants.

Michael L. Jackson, John W. Koenig, Jr. and Rich Tiemeyer, Sikeston, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Plaintiffs Robert and Sharon Sheedy ("the Sheedys") appeal from a summary judgment in favor of Defendant Missouri Highways and Transportation Commission ("the Commission"). The instant lawsuit arose after the Commission brought an action to condemn some of the Sheedys' real estate for an expansion of Highway 60. The area to be condemned excluded a parcel of land, approximately 1.2 acres in size, which the Sheedys' predecessors in title had conveyed to the Commission by quit-claim deed in 1929 to serve as a highway right-of-way. Based on this prior conveyance, the Commission contended that it was not required to condemn the 1.2 acre tract because it had already purchased, and continued to possess, an easement interest in this land.

In response, the Sheedys filed a lawsuit challenging the Commission's position that it currently possessed an easement over the 1.2 acre tract. Relying on § 228.190, the Sheedys claimed the Commission had abandoned its easement through five years of nonuse.[1] The Commission and the Sheedys filed cross-motions for summary judgment. The trial court decided § 228.190 does not apply to state highways and granted summary judgment to the Commission. On appeal, the Sheedys challenge that ruling; alternatively, they request that the case be remanded so they can proceed on a theory of common law abandonment. Finding no merit in either argument, we affirm the trial court's judgment.

## I. Facts and Procedural History

This case involves a segment of Highway 60 in Carter County, Missouri, that was constructed over seventy years ago. On June 29, 1929, the Commission paid $550 to the Sheedys' predecessors in title to purchase a right-of-way for a state highway. The Commission's right-of-way interest in this land was conveyed by way of a quit-claim deed. The deed, which was titled "CONVEYANCE OF RIGHT OF WAY," granted the Commission an easement interest in this 1.2 acre tract of land. *See Ogg v. Mediacom, L.L.C.,* 142 S.W.3d 801, 811–12 (Mo.App.2004) (quitclaim deed titled "RIGHT OF WAY DEED" conveyed an easement for state highway right-of-way purposes); *Hartman v. J & A Dev. Co.,* 672 S.W.2d 364, 365 (Mo.App.1984) (the use of terms such as "right of way," "road," or "roadway" as a limitation on the use of land is a strong, almost conclusive indication that the interest conveyed is an easement).

At some point in time prior to 1986, the intersection of Highway 60 and Highway A was rebuilt in such a fashion that the disputed 1.2 acre tract became an unused roadbed. This portion of the old highway ran about 200 feet from Highway A to a dead end about 75 feet from the new location of Highway 60. In 1986, the Sheedys purchased the property on which the roadbed lies. The public has not used the old roadbed at any time since the Sheedys acquired the property. Robert Sheedy, who makes his living as a truck driver, utilized the roadbed as a place to park his tractor-trailer unit when he was not on the road.

In 2003, Defendant filed an action to condemn other portions of the Sheedys' property for the purpose of expanding Highway 60 into a four-lane highway. The Commission did not seek to condemn the 1.2 acres on which the unused roadbed lies. The Commission claimed it still had the right to use the easement it purchased in 1929 for the same purpose; i.e., a highway

---

1. All statutory references are to RSMo (2000).

right-of-way. Thereafter, the Sheedys filed a multi-count lawsuit against the Commission. The Sheedys' petition included counts for declaratory relief, ejectment, inverse condemnation, quiet title and trespass. All of the requests for relief in the Sheedys' petition were based on the premise that the Commission had abandoned its easement by operation of law pursuant to § 228.190, which states:

> All roads in this state that have been established by any order of the county commission, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuse by the public for five years continuously of any public road shall be deemed an abandonment and vacation of same.

Although the first sentence of this statute limits its application to roads established by order of a county commission, the Sheedys claimed the five-year nonuser provision contained therein applies to state highways.[2] The Sheedys' contention was based on § 227.090, which states:

> All laws of this state relating to the construction, maintenance or obstruction of roads, which do not conflict with the provisions of chapters 226 and 227, RSMo, and are consistent with the provisions of said chapters, shall apply to the construction, maintenance and obstruction of all state highways, and the duties and powers imposed by such laws on certain officials shall devolve upon the engineer, or other officer of the

highways and transportation commission designated by the commission.

The Commission disputed the Sheedys' contention that § 228.190 applies to state highways.

The Commission and the Sheedys filed cross-motions for summary judgment presenting this legal issue for the trial court to resolve. In the Sheedys' response to the Commission's motion, they admitted that "their claims in each count of the petition are only dependent of the application of § 228.190 to the property and/or property rights owned by [the Commission]." In the Sheedys' suggestions opposing the Commission's motion, they agreed that "the entire case hinges on whether § 227.090 makes § 228.190 applicable to State highways." In the Sheedys' own motion, they stated that "the undisputed facts as set forth below establish that they are entitled to judgment as a matter of law as the road on their property was abandoned by non-use by the public for five years as provided for in § 228.190." They repeated their admission that they were not entitled to relief on any count of their petition unless § 228.190 applies to state highways.

The judge ruled that issue against the Sheedys. The court decided § 228.190 did not apply to state highways because this statute was not a law "relating to the construction, maintenance or obstruction of roads." The court entered summary judgment for the Commission, and the Sheedys appealed.

## II. Standard of Review

In the Sheedys' lawsuit, the Commission was the defending party as that term is

---

2. A state highway system with prescribed routes in and through each county was created by statute. See § 227.020.

defined by Rule 74.04(b).[3] A defending party "may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense." *Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 58–59 (Mo. banc 2005).

The Commission moved for summary judgment on the ground that it had not abandoned its easement interest in the 1.2 acre tract of land. The Sheedys' response to that motion admitted they were not entitled to relief on any of the five counts in their petition unless § 228.190 applies to state highways, resulting in an abandonment of the Commission's easement interest by operation of law. Thus, the Commission sought to establish its right to summary judgment by the first method listed above: negating the essential element of abandonment. The material facts relevant to this legal issue are not in dispute. The trial court decided the issue in favor of the Commission.

■ For reasons to be stated anon, the only question properly presented by the Sheedys' appeal is whether § 228.190 applies to state highways. Since there is no genuine issue as to any material fact pertinent to this question, we are presented with an issue of law to decide. *See City of Springfield v. Gee*, 149 S.W.3d 609, 612 (Mo.App.2004). We review the trial court's determination of that legal issue *de novo* without any deference to how the question was decided below. *Bumm v. Olde Ivy Development, LLC*, 142 S.W.3d

895, 896–97 (Mo.App.2004). Our task is to determine whether the Commission, as the party moving for summary judgment, was entitled to judgment as a matter of law. Rule 74.04(c)(6); *A & E Enterprises, Inc. v. Clairsin, Inc.*, 169 S.W.3d 884, 886 (Mo. App.2005).

## III. Discussion and Decision

In the court below, the Sheedys presented only one theory for the trial court's consideration. They argued that § 228.190 applies to state highways as well as county roads; consequently, by not using the easement for five years, the Commission abandoned its interest in that property by operation of law. On appeal, the Sheedys have substantially modified their position. The Sheedys' point relied on asserts that, even if the trial court was correct in concluding that § 228.190 does not apply to state highways, we should remand the case so they can proceed anew on a theory of common law abandonment. Accordingly, our first task in treading out the grain of this appeal is to decide whether the Sheedys may rely on a new theory, advanced for the first time on appeal, to overturn the trial court's judgment.

■ We begin by noting that appellate review of a decision to grant summary judgment is limited to the issues put before the trial court. *Barner v. The Missouri Gaming Co.*, 48 S.W.3d 46, 50 (Mo. App.2001); *Country Mut. Ins. Co. v. Matney*, 25 S.W.3d 651, 654 (Mo.App.2000). "An issue not presented to the trial court is not preserved for appellate review." *Barner*, 48 S.W.3d at 50. Thus, a party is bound by the position he or she took in the trial court, and we can review the case only upon those theories. *City of Cuba v. Williams*, 17 S.W.3d 630, 632 (Mo.App. 2000); *Scott v. Edwards Transp. Co.*, 889

---

**3.** All references to rules are to the Missouri Court Rules (2005).

S.W.2d 144, 147 (Mo.App.1994). On review, an appellate court will not convict a trial court of error based on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982); *Sisk v. McIlroy and Associates*, 934 S.W.2d 567, 574 (Mo.App.1996).

The Sheedys' argument is based on a fundamental misconception of what the trial court did when it granted the Commission's motion for summary judgment. According to the Sheedys, all the trial court did was dismiss their petition. Ergo, remand is required so they can proceed on a theory of common law abandonment since the allegations of their petition are broad enough to encompass this additional legal theory. We reject this assertion. In *McGlothin v. Eidelman & Traub, Inc.*, 733 S.W.2d 851 (Mo.App.1987), the plaintiffs sued a group of dentists and their attorney for wrongful garnishment and abuse of process. After the defendants were granted summary judgment, plaintiffs appealed. They argued that the trial court should not have granted summary judgment because the plaintiffs' petition was broad enough to state a cause of action for *prima facie* tort. The summary judgment in favor of defendants was affirmed because the plaintiffs' *prima facie* tort theory of recovery was not raised or decided below:

> We first address the procedural aspects of plaintiffs' allegation of error. At the hearing on the motions for summary judgment, plaintiffs took the position that they were proceeding solely on a wrongful garnishment theory. Based on that, the trial court granted summary judgment in favor of defendants. A hearing on a motion for summary judgment is a trial before the court without a jury. Summary judgment constitutes a final judgment on the merits and constitutes a bar to future litigation on the same cause of action. Further, having pursued a remedial right to judgment on one theory, a party is barred from subsequently pursuing an inconsistent remedial theory. On appeal, a party is bound by the position he took in trial court; and the appellate court can review the case only upon the theory tried. In the present case, plaintiffs elected to proceed in the trial court only on the theory of wrongful garnishment. On appeal, they disavow any other theory except prima facie tort. The prima facie tort theory was not raised or considered by the trial court. Plaintiffs are foreclosed from now raising a theory different from the theory considered and rejected by the trial court.

*Id.* at 853 (citations omitted). *McGlothin* is directly on point and forecloses appellate review of the Sheedys' argument that the case should be remanded so they can proceed on a theory of common law abandonment.

 The threshing process is further complicated by the fact that the Commission also seeks to present a new defensive theory for the first time on appeal. The Commission, however, does so for the purpose of advancing a new ground to affirm the trial court's judgment. Unlike an appellant, a respondent in a court-tried case is permitted to raise a new theory on appeal, but only for the purpose of sustaining a favorable judgment. *See, e.g., American Standard Ins. Co. of Wisconsin v. May*, 972 S.W.2d 595, 601 (Mo.App.1998) (in a court-tried case, an appellate court is required to affirm the trial court's judgment if it is correct on any reasonable theory which is consistent with the pleadings and is supported by the evidence, regardless of the theory of recovery or defense relied upon by the respondent at trial); *McKnight v. Midwest Eye Institute of Kansas City, Inc.*, 799 S.W.2d 909, 919 (Mo.App.1990) (a respondent who does not cross-appeal may defend the favorable

judgment with any argument supported by the record). Therefore, we will consider the Commission's argument.

The Commission correctly points out that the warranty deed conveying the property to the Sheedys granted them fee simple ownership of the real estate "excepting therefrom 1.2 acres, more or less, for easement for Right-of-way for old U.S. Highway NO. 60...." The Commission contended this language means the Sheedys did not own the reversionary interest in the 1.2 acre tract. We find no merit in this assertion. The aforementioned exception simply means the Sheedys acquired a fee simple interest in that 1.2 acres, subject to the easement held by the Commission. *See Cravens v. Jolly,* 623 S.W.2d 569, 572 (Mo.App.1981) (holding that "a grant of land with full covenants of warranty, which definitely describes the land conveyed, and then excepts or reserves a roadway for the use of the public, or a railroad or other right of way, as such, occupying a mere easement on, over, or across the land conveyed, conveys the fee to the entire tract subject to the easement reserved"); 26A C.J.S. *Deeds* § 277 (2001). Therefore, the Sheedys do own the reversionary interest in the 1.2 acre tract that is burdened by the Commission's easement.

■ Having winnowed out the chaff from the wheat, we now turn to the dispositive question in this appeal: whether § 227.090 makes the provisions of § 228.190 applicable to state highways. Construction of this statute presents a question of law, which we review *de novo. Delta Air Lines, Inc. v. Director of Revenue,* 908 S.W.2d 353, 355 (Mo. banc 1995); *Hadel v. Board of Educ. of School Dist. of Springfield, R–12,* 990 S.W.2d 107, 111 (Mo.App.1999). The purpose of statutory construction is to ascertain the legislature's intent from the language used and to give effect to that intent. *State ex rel.*

*Riordan v. Dierker,* 956 S.W.2d 258, 260 (Mo. banc 1997); *Hadel,* 990 S.W.2d at 111; *City of Ellisville v. Lohman,* 972 S.W.2d 527, 534 (Mo.App.1998). We read statutes in their plain, ordinary and usual sense. *Bosworth v. Sewell,* 918 S.W.2d 773, 777 (Mo. banc 1996). Where there is no ambiguity, we will not resort to statutory construction. *Id.* In addition, "[t]his Court must avoid interpretations that are unjust, absurd, or unreasonable. Accordingly, we consider the statute in the context of the entire statutory scheme on the same subject in order to discern legislative intent." *Benoit v. Missouri Highway and Transp. Comm'n,* 33 S.W.3d 663, 673–74 (Mo.App.2000) (citations omitted).

■ Our analysis commences, as it must, with an examination of the text of § 227.090. It states:

> All laws of this state relating to the construction, maintenance or obstruction of roads, which do not conflict with the provisions of chapters 226 and 227, RSMo, and are consistent with the provisions of said chapters, shall apply to the construction, maintenance and obstruction of all state highways, and the duties and powers imposed by such laws on certain officials shall devolve upon the engineer, or other officer of the highways and transportation commission designated by the commission.

It is immediately apparent that § 228.190 does not apply to state highways unless two prerequisites are met: (1) this law must relate to "the construction, maintenance or obstruction of roads"; and (2) this law must not conflict or be inconsistent with the provisions of Chapters 226 and 227. To evaluate the Sheedys' argument, we must see whether each prerequisite is satisfied in the case at bar.

■ We note that the terms "construction," "maintenance" or "obstruction" are

not statutorily defined in § 227.090 or elsewhere in Chapter 227. "When a term is undefined, the legislature is presumed to intend that the term be used in its plain and ordinary meaning according to the dictionary." *Tendai v. Missouri State Bd. of Registration for Healing Arts,* 161 S.W.3d 358, 366 (Mo. banc 2005); *Asbury v. Lombardi,* 846 S.W.2d 196, 201 (Mo. banc 1993). In the respects pertinent here, BLACK'S LAW DICTIONARY (8th ed.2004) defines these terms in the following way:

> construction: "The act of building by combining or arranging parts or elements; the thing so built." *Id.* at 332.

> maintenance: "The care and work put into property to keep it operating and productive; general repair and upkeep." *Id.* at 973.

> obstruction: "Something that impedes or hinders, as in a street, river, or design; an obstacle. The act of impeding or hindering something; interference." *Id.* at 1107.

As these definitions make clear, § 227.090 makes applicable to state highways only those statutes dealing with the physical processes of building, keeping up and clearing roads. An examination of the text of § 228.190 demonstrates that it is not this type of statute at all. It states:

> All roads in this state that have been established by any order of the county commission, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuse by the public for five years continuously of any public road shall be deemed an abandonment and vacation of same.

As used in this statute, the word "established" refers to the location and boundaries of the road. *See* § 228.010. The words "abandonment" and "vacation" are undefined in § 228.190 or in Chapter 228, so we look again to the definitions of those words found in BLACK'S LAW DICTIONARY. *See Spradlin v. City of Fulton,* 982 S.W.2d 255, 262 (Mo. banc 1998); *Hadel v. Board of Educ. of School Dist. of Springfield, R–12,* 990 S.W.2d 107, 112 (Mo.App.1999). In the respect pertinent here, "abandonment" means "[t]he relinquishing of a right or interest with the intention of never again claiming it." BLACK'S LAW DICTIONARY 2 (8th ed.2004). "Vacation" is defined by the same source as "[t]he act of vacating." *Id.* at 1584. In the respect pertinent here, "vacate" means "[t]o surrender occupancy or possession; to move out or leave." *Id.* Thus, § 228.190 is solely concerned with the legal means by which a county road can be established, vacated or abandoned. Like the trial court, we conclude that § 228.190 is not a law "relating to the construction, maintenance or obstruction of roads."

The result we reach today was foreshadowed by our discussion of this same issue in *Harrison v. State Highways and Transp. Comm'n,* 732 S.W.2d 214 (Mo. App.1987). There, the appellants argued that the Commission had abandoned its easement interest in a temporary borrow pit through almost 25 years of nonuse. To support that argument, the appellants contended that § 228.190 would govern the time frame for abandoning an easement interest in a state highway, and the same five-year time frame should be applied to the temporary borrow pit. We held that § 228.190 did not apply to the borrow pit because it did not constitute a public road. In dicta, we also made the following observation which we find apropos to the case at bar:

Plaintiffs have cited no case where § 228.190 has been held applicable to the abandonment of a state highway. Plaintiffs claim that § 227.090 has the effect of making the five-year nonuser portion of § 228.190 applicable to a state highway. It is at least arguable that § 227.090 does not have that effect. That statute deals with all laws of this state relating to the *"construction, maintenance or obstruction* of roads...." It is arguable that nonuser of a highway is not "construction" or "maintenance" or "obstruction" of a highway.

*Id.* at 220 (emphasis in original). Since *Harrison* was decided, there still has been no Missouri appellate decision holding that § 228.190 applies to the abandonment of an easement interest in a state highway. Further, for the reasons already discussed, we agree with Judge Flanigan's view that the nonuser provision in § 228.190 does not relate at all to the construction, maintenance or obstruction of roads.

The Sheedys' argument that § 228.190 applies to state highways fails for a second reason as well. In reviewing the trial court's grant of summary judgment to the Commission, we are required to affirm the judgment if it is sustainable as a matter of law on any reasonable theory. *Harmon v. Headley,* 95 S.W.3d 154, 157 (Mo.App. 2003); *S & P Oyster Co., Inc. v. U.S. Fidelity and Guar. Co.,* 865 S.W.2d 379, 381 (Mo.App.1993); *Baker v. Baker,* 813 S.W.2d 116, 119 (Mo.App.1991). Although not addressed by the trial court, we find merit in the Commission's alternative argument that the nonuser provision in § 228.190 cannot apply to a state highway because it conflicts with Chapter 227.

As previously mentioned, § 227.090 does not authorize another law to be applied to a state highway if doing so would be in conflict or inconsistent with Chapters 226

or 227. The gist of the Sheedys' argument is that § 228.190 would permit the Commission's state highway easement interest to be abandoned by operation of law after five years of nonuse. This interpretation of § 228.190 would place it in conflict with the provisions of Chapter 227.

■ Chapter 227, which established the state highway system, specifically prescribes the location of state highways in each county of the state. *See* § 227.020. The state is only permitted to abandon a portion of a prescribed state highway when "the construction or operation of any waterpower and/or hydroelectric project results in the inundation of any portion of a state highway...." § 227.270. We also note that § 227.290 generally requires the sale of interests in land previously acquired by the Commission that are no longer useful:

> Whenever in the opinion of the state highways and transportation commission the advantageous use of any interest in land or any leasehold which has heretofore or may hereafter be acquired by the commission has ceased, the state highways and transportation commission shall have authority to convey the same for the best available cash price by deed signed by its chairman or vice chairman and attested by its secretary; provided, however, that before any sale shall be consummated under this section, the grantor to the state of the property offered for sale, if real estate, and if such grantor shall at the time be in possession of the adjoining land, shall be notified by written notice of the state transportation department, of such contemplated sale; provided, that all moneys received from the disposal of any such interest in land or leasehold shall be deposited in the state treasury to the credit of the state road fund; provided further, that when any land or leasehold

herein described has been donated without charge whatsoever, by the owner and grantor of said property to the purpose of state highway construction or maintenance and such grantor is still in possession of contiguous property, the same shall revert to such original owner without cost to him if and when relinquished by the state.

Thus, if a previously-acquired interest in land is no longer useful, this statute gives the Commission the discretionary authority to sell that interest for the best available cash price.[4] *A & E Enterprises, Inc. v. Clairsin, Inc.*, 169 S.W.3d 884, 886–87 (Mo.App.2005); *Miller v. Missouri Dept. of Transp.*, 97 S.W.3d 478, 482 (Mo.App. 2002). The money derived from such a sale is deposited in the state road fund. Sale of the interest is prohibited only if the owner donated the land and such owner is still in possession of contiguous property. In that instance alone, the interest reverts without cost to the original owner. § 227.290. Applying § 228.190 so as to authorize abandonment of a state highway easement due to nonuse would, therefore, be in direct conflict with the provisions of § 227.270 and § 227.290. In particular, such a construction of § 228.190 would emasculate the discretionary authority § 227.290 gives the Commission to decide whether to hold or sell interests in land that are not currently useful. For this additional reason, the trial court did not err in holding that § 228.190 does not apply to state highways.

We reject the Sheedys' argument that § 227.090 is rendered meaningless if § 228.190 does not apply to state highways. One example will suffice. Section 229.030 states, in pertinent part, that "[p]ublic roads shall be cleared of all obstructions therein that hinder or interfere with travel or traffic thereon...." Quite plainly, § 229.030 deals with the obstruction of roads. We perceive no reason why this statute would be in conflict with the provisions of Chapters 226 and 227. Accordingly, § 227.090 makes § 229.030 applicable to state highways. This refutes the Sheedys' argument that the trial court's construction of § 227.090 renders the statute meaningless.

The trial court concluded that § 228.190 does not apply to state highways. For the reasons stated above, we agree with that conclusion. Accordingly, the Sheedys' point on appeal is denied, and the trial court's entry of summary judgment in favor of the Commission is affirmed.

SHRUM, P.J., and BARNEY, J., concur.

---

4. An easement is an interest in real property that runs with the land and is binding on successive owners. *See Riverside–Quindaro Bend Levee Dist., Platte County, Missouri v.*

*Missouri American Water Co.*, 117 S.W.3d 140, 155 (Mo.App.2003); *Borton v. Forest Hills Country Club*, 926 S.W.2d 232, 234 (Mo. App.1996).